[Cite as *State v. Shaw*, 2017-Ohio-7404.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105111**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CARLTON JUNIOR SHAW

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, MODIFIED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-602195-A

**BEFORE:** E.T. Gallagher, J., McCormack, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 31, 2017

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender

BY:    Cullen Sweeney
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Andrea N. Isabella
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Carlton Junior Shaw, appeals his convictions and raises the following four assignments of error:

1. Carlton Shaw's conviction for tampering with evidence is not supported by legally sufficient evidence as required by state and federal due process.

2. The verdict form on Count 3 (discharge of a firearm on or near a prohibited premises) only supports a conviction for a misdemeanor of the fourth degree because the verdict form did not state the degree of the offense or include the aggravating element, as required by R.C. 2945.75.

3. The trial court erred in failing to instruct the jury on the lesser charge (misdemeanor version) of discharging a firearm on or near a prohibited premises.

4. Carlton Shaw was denied his right to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when his attorney failed to ensure that the jury received all the necessary instructions.

{¶2} We find some merit to the appeal, affirm Shaw's tampering with evidence conviction and modify Shaw's discharging a firearm on or near a prohibited premises by reducing it from a third-degree felony to a first-degree misdemeanor.

## I. Facts and Procedural History

{¶3} Shaw was charged with two counts of felonious assault, one count of tampering with evidence, and one count of discharging a firearm on or near a prohibited premises. One of the victims, Lavonte Hinchen, testified at trial that he has two children with Whitley Harris, who was living with Shaw at the time of the events giving rise to this case. Hinchen testified that although he shared joint custody of the children with Harris, Harris often refused to relinquish custody of the children to Hinchen for visitation

in accordance with a joint custody order. Over time, the animosity between them had become hostile.

{¶4} Hinchen testified that he often tried to call Harris to schedule visitation, but she never answered his calls. According to Harris, Hinchen became increasingly aggressive to the point that she sought and obtained a temporary restraining order to prevent Hinchen from coming to her house. Hinchen, who alleges he was unaware of the temporary restraining order, asked his brother, Anthony Lee, to accompany him to pick up his children from Harris's home on December 20, 2015.

{¶5} Lee drove separately and met Hinchen at Harris's apartment, which was located inside a multifamily house. Hinchen knocked on the door, and Harris refused to allow him to take the children, claiming she had a protective order that prevented him from coming to her home. Lee suggested to Hinchen that he go to the police department and ask for assistance in enforcing the child custody order. Hinchen agreed and set off to the police station.

{¶6} Meanwhile, Harris exited the building and began speaking with Lee, with whom she had a better relationship. While they were talking, Shaw appeared "out of nowhere," stuck a gun in his face, and threatened "I'm about to body you." (Tr. 331.) Lee testified that Shaw was "highly agitated" and was "swaying side to side" with his finger on the gun's trigger. Harris told Shaw, "He is a man of God. He is a minister. * * * Don't shoot him." (Tr. 337.) Lee, who was a psycho-educational-juvenile therapist and an ordained clergyman, was trained to counsel juveniles with oppositional

defiance disorder and PTSD. He calmly spoke to Shaw in an attempt to diffuse the situation. (Tr. 313.)

{¶7} Shaw began to regain composure, but Hinchen returned to the scene to see why Lee was not following him to the police station. When Shaw saw Hinchen, he became agitated again. Lee pushed Shaw behind the apartment building to remove him from Hinchen's sight. Shaw seemed to be listening to Lee, who was still trying to calm him down, but when Hinchen appeared from behind the building, Shaw "flared up" again. (Tr. 345.) Lee hugged Shaw to restrain him, but Shaw grabbed Lee's wrist, on which he had recently had surgery, and Lee recoiled in pain. Lee could not stop Shaw so he yelled to Hinchen to run. (Tr. 347.) According to Lee, Shaw pointed the pistol in Hinchen's direction and pulled the trigger. The gun misfired at first, but Shaw eventually fired three to four shots.

{¶8} Lee, who had a concealed carry permit, lifted his gun in self-defense but realized the slide on Shaw's gun was open, which meant that it was out of ammunition. Shaw "took off running," and Lee walked back to the front of the building where Harris was "crying hysterically" in the front yard. (Tr. 350.) Lee told Harris to secure the children inside and called 911. (Tr. 350.)

{¶9} Lee began driving to the nearest police station and happened upon a police cruiser on a nearby street. After Lee told the police what happened, they activated their lights and drove to Harris's apartment. Meanwhile, Hinchen called the police and reported that he had seen Shaw aim a gun at Lee's head. Harris also called the police to

report that Hinchen was at her door in violation of the protection order. Soon there were ten police officers on the scene.

{¶10} Sgt. William Mokshefsky questioned Shaw at the scene. Shaw denied he had a gun or shot a gun. Yet, while police were detaining Shaw, other officers discovered his gun hidden in a wall in the basement of the apartment building. When Detective Arrif Shahid questioned Shaw the following day, Shaw admitted he owned a gun and that he fired it, but claimed he only fired a single warning shot into the ground.

{¶11} At trial, Shaw admitted he was angry and wanted to fight Hinchen. He also admitted that he possessed a gun when he exited the apartment and confronted Lee. Shaw explained that two weeks earlier, Hinchen aggressively confronted him and Harris at a McDonald's drive-thru. Hinchen pulled his car up next to Harris's car in the drive-thru. He knocked on the window and attempted to open the door to Harris's car. When the two cars were stopped at a red light at the end of the McDonald's driveway, Shaw exited Harris's car and approached Hinchen, who exited his car. Shaw testified that because he observed Hinchen open his trunk and reach for a firearm, he got back in Harris's car and they drove away.

{¶12} Shaw testified that he feared for his life when Hinchen came to Harris's apartment because of the incident at the McDonald's. Although he admitted that he wanted to fight Hinchen, he testified that he held his gun solely for self-defense and only fired a single warning shot. He never intended to shoot Lee or Hinchen.

**{¶13}** The jury acquitted Shaw of both counts of felonious assault but found him guilty of discharging a firearm on or near a prohibited premises and tampering with evidence. The court sentenced him to a three-year prison term on the firearm specifications and community control sanctions on the underlying offenses. (Tr. 889.) Shaw now appeals his convictions.

## II. Law and Analysis

### A. Tampering with Evidence

**{¶14}** In the first assignment of error, Shaw argues his tampering with evidence conviction is not supported by sufficient evidence.

**{¶15}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶16}** Shaw was convicted of tampering with evidence in violation of R.C. 2921.12(A)(1). R.C. 2921.12(A)(1) provides that "no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" Thus, to prove tampering with evidence, the state had to prove that the

defendant (1) had knowledge that an official proceeding or investigation was in progress or likely to be instituted; and (2) altered, destroyed, concealed, or removed the potential evidence; (3) for the purpose of impairing the potential evidence's availability or value in such proceeding or investigation. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

{¶17} In other words, a tampering with evidence conviction requires proof that the defendant intended to impair the availability of evidence that is related to "an existing or likely official investigation or proceeding." *Id*. at ¶ 19. Thus, the state must prove the defendant knew that an investigation was either ongoing or likely to occur at the time he altered, destroyed, or concealed the evidence. *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 22.

{¶18} "'A person has knowledge of circumstances when the person is aware that such circumstances probably exist.'" *Id*., quoting *Black's Law Dictionary* 1004 (10th Ed.2014). In determining whether the defendant acted knowingly or purposely, the jury may infer the defendant's state of mind from the surrounding circumstances. *State v. Sharp*, 8th Dist. Cuyahoga No. 103445, 2016-Ohio-2634, ¶ 19, citing *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786, ¶ 13. A person acts "purposely" when "it is his specific intention to cause a certain result." R.C. 2901.22(A).

{¶19} Shaw argues, citing *Barry*, that it could not be presumed that the police would investigate a shooting incident simply because he fired a gun. He also contends there is no actual evidence that he knew an investigation was likely to be instituted

against him when he concealed the gun in a wall in the basement of Harris's apartment building. Indeed, Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense. *Barry* at syllabus. "[T]he fact that an act was unmistakably a crime does not, by itself, establish that the accused knew of an investigation into that crime or that such investigation was likely to be instituted." *Id.*

{¶20} In *Barry*, the defendant concealed several grams of heroin wrapped in a condom in her vagina during a drive from Middletown, Ohio to Huntington, West Virginia. A state highway patrol officer stopped her vehicle after hearing its defective muffler and observing erratic driving. The officer smelled marijuana and searched the car but only found a bag containing marijuana residue. However, after speaking with Barry and her friends, the officer suspected that Barry's friends had given her contraband that she was hiding in her body. She later produced the condom containing the heroin in the presence of a female officer and was charged with trafficking in heroin, possession of heroin, conspiracy to traffic in drugs, and tampering with evidence. *Id*. at ¶ 8.

{¶21} Barry was subsequently convicted of tampering with evidence after admitting at trial (1) that she concealed the heroin so the police could not see it and (2) that she knew it was "an unmistakable crime" to possess heroin. However, on appeal Barry argued the trial court erred in giving the "unmistakable crime" instruction to the jury because it improperly created an irrebuttable presumption that she had knowledge of an investigation regardless of whether she could have anticipated it. In reversing Barry's

conviction, the Ohio Supreme Court held that "merely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was * * * likely to be instituted." *Id*. at ¶ 26.

**{¶22}** In reaching this conclusion, the court referred to its earlier decision in *Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175. In that case, two narcotics detectives stopped Straley's car after observing it travel left of center. They suspected Straley of driving under the influence of alcohol, but when the search of her car revealed no contraband, the detectives decided not to arrest her. However, Straley needed to urinate while the officers were attempting to find her a safe ride home. An officer searched the area where she relieved herself and discovered a urine soaked cellophane baggie containing crack cocaine. *Straley* at ¶ 19.

**{¶23}** Straley subsequently pleaded no contest to drug trafficking and possession of cocaine, and a jury convicted her of tampering with evidence. In affirming the appellate court's decision reversing Straley's tampering with evidence conviction, the Ohio Supreme Court explained "[t]here is nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie." *Id*.

**{¶24}** Although both Straley and Barry concealed contraband, it was unlikely that an investigation into drug trafficking was going to be instituted against them at the time they hid the evidence. Unlike the facts of this case, there was nothing that would have

drawn attention to their drug trafficking activity. Straley and Barry concealed the contraband before they knew they would actually encounter the police. Hiding the evidence was a preemptive measure as opposed to a reaction to a likely investigation of a recent criminal act. Shooting a gun in a residential neighborhood in broad daylight is an entirely different circumstance than those presented in *Straley* and *Barry* because it involves a loud disturbance that is likely to attract attention.

{¶25} Moreover, Shaw fired the weapon during an angry confrontation with Lee and Hinchen. Lee and Hinchen testified that Shaw aimed the gun at Hinchen when he fired the shots. Under these circumstances, it is reasonable to infer that Lee and Hinchen would call the police to report the incident. And Shaw admits he fired the gun, though he claims he fired a single warning shot into the ground. Even if the jury believed that Shaw only fired a warning shot, it is still reasonable to conclude that Lee and Hinchen would call the police because Shaw, who was admittedly angry, fired the weapon during an argument.

{¶26} Shaw also knew that Harris had a protective order that prohibited Hinchen from coming to her house. Shaw testified that when he learned that Hinchen was at the front door, he thought to himself:

> I'm like he's back again. This is not the first time he's done this. Call the police. I don't know why the police force is not here. Called the police various times. Took the next step to get a restraining order.

(Tr. 736.) Thus, it is reasonable to infer that Shaw knew Harris would have called the police to the scene to enforce the protection order against Hinchen, whom Harris claimed

had become increasingly aggressive. Therefore, under the totality of the circumstances, the jury could reasonably conclude that Shaw knew there was a strong likelihood that the police would soon arrive on the scene to investigate the shooting.

{¶27} Therefore, there was sufficient evidence to establish that Shaw committed all the elements of tampering with evidence. The first assignment of error is overruled.

## B. Misdemeanor Offense

{¶28} In the second assignment of error, Shaw argues his third-degree felony conviction for discharging a firearm on or near a prohibited premises should be reduced to a fourth-degree misdemeanor to conform to the jury's verdict.

{¶29} Shaw was found guilty of discharging a firearm on or near a prohibited premises in violation of R.C. 2923.162(A)(3), which provides that "no person shall discharge a firearm upon or over a public road or highway." The indictment alleged that Shaw discharged a firearm upon or over a public road or highway and that "the violation created a substantial risk of physical harm to any person or caused serious physical harm to property." This language elevated the offense from a misdemeanor to a third-degree felony pursuant to R.C. 2923.162(C)(2).

{¶30} Although the trial court instructed the jury on the offense enhancing language, the verdict form on which the jury found Shaw guilty did not include the aggravating elements. R.C. 2945.75 provides:

When the presence of one or more additional elements makes an offense one of more serious degree * * * [a] guilty verdict shall state either the

degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶31} The Ohio Supreme Court has held that because this statutory language is plain and unambiguous, it must be applied as written. *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, ¶ 11. *See also State v. Lee*, 8th Dist. Cuyahoga No. 103988, 2016-Ohio-8324, ¶ 32. "R.C. 2945.75(A) plainly requires that in order to find a defendant guilty of 'an offense * * * of more serious degree,' the guilty verdict must either state 'the degree of the offense of which the offender is found guilty' or state that 'additional element or elements are present.'" *Id*.

{¶32} The state concedes that the verdict form in this case does not support a third-degree felony conviction because it neither states the degree of the offense nor provides the offense enhancing language. Therefore, based on the verdict form, the jury could only find Shaw guilty of the misdemeanor version of the offense.

{¶33} However, despite Shaw's argument that his conviction should be reduced to a fourth-degree misdemeanor, R.C. 2923.162(C)(1) provides that discharging a firearm "upon or over a highway" in violation of R.C. 2923.162(A)(3) is a first-degree misdemeanor. Therefore, Shaw's discharging a firearm on or near a prohibited premises should be reduced from a third-degree felony to a first-degree misdemeanor.

{¶34} The second assignment of error is sustained.

## C. Jury Instruction on Misdemeanor Offense

**{¶35}** In the third assignment of error, Shaw argues, in the alternative to the second assignment of error, that the trial court erred in failing to charge the jury on the misdemeanor offense of discharging a weapon on or near a prohibited premises. However, because we have determined that Shaw could only be convicted of the misdemeanor form of the offense according to the verdict form, this assigned error is moot.

### D. Ineffective Assistance of Counsel

**{¶36}** In the fourth assignment of error, Shaw argues his Sixth Amendment right to the effective assistance of counsel was violated because his trial counsel failed to ensure that the court provided complete and accurate jury instructions on the elements of tampering with evidence and the misdemeanor version of discharging a firearm at or near a prohibited premises. Since we have already determined that Shaw could only be convicted of the misdemeanor version of discharging a firearm at or near a prohibited premises, our discussion focuses solely on Shaw's arguments as they relate to the trial court's instructions on tampering with evidence.

**{¶37}** To establish a claim for ineffective assistance of counsel, Shaw must show that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the defendant must demonstrate there is a "reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

**{¶38}** As previously stated, Shaw contends his trial counsel should have asked the court to instruct the jury on how it should determine whether Shaw knew that an investigation would likely be instituted against him in accordance with *Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248. He contends the court's charge, which mirrored the statutory language governing tampering with evidence, was inaccurate and incomplete.

**{¶39}** As previously stated, the Ohio Supreme Court in *Barry* specifically rejected the proposition that by simply committing an "unmistakable crime," the defendant has constructive knowledge of an impending investigation into the crime. *Id.* at ¶ 23. Accordingly, the court in *Barry* held that the trial court erred by providing the following "unmistakable crime" instruction:

> When an offender commits an unmistakable crime, the offender has constructive knowledge of an impending investigation of the crime committed.

The trial court in this case did not provide an "unmistakable crime" instruction.

**{¶40}** Further, R.C. 2921.12(A)(1), which governs tampering with evidence, provides that "no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as

evidence in such proceeding or investigation[.]" The court charged the jury on tampering with evidence as follows:

> Before you can find the defendant guilty of tampering with evidence, you must find beyond a reasonable doubt that on or about the 20th day of December 2015 in Cuyahoga County, Ohio, the defendant did, knowing that an official proceeding or investigation was in progress or was about to be or likely to be instituted, alter, destroy, conceal or remove any record, document or thing with purpose to impair its value or availability as evidence in such proceeding or investigation.

The trial court's instruction on the elements of tampering with evidence was consistent with the statute. In *Barry,* the Ohio Supreme Court defined the term "knowingly" as follows:

> "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

*Id*. at ¶ 23, quoting R.C. 2901.22(B).

**{¶41}** With respect to the knowingly mens rea, the trial court instructed the jury as follows:

> A person acts knowingly regardless of purpose when the person's aware that person's conduct will probably cause a certain result or be of a certain nature. A person has knowledge of circumstances when the person's aware that such circumstances probably exist.
>
> When knowledge of the existence of a particular fact is an element of an
>
> offense, such knowledge is established if a person subjectively believes that

there is a high probability of its existence and fails to make inquiry or act with a conscious purpose to avoid learning the fact.

{¶42} This language is identical to the Ohio Supreme Court's definition of "knowingly" in *Barry*. The trial court's instructions on tampering with evidence and the term "knowingly" were consistent with *Barry* in every respect. There was no reason for Shaw's counsel to request a different instruction since the charge the court gave the jury was a complete and accurate statement of the applicable law.

{¶43} Therefore, the fourth assignment of error is overruled.

### III. Conclusion

{¶44} Shaw's tampering with evidence conviction was supported by sufficient evidence. A jury could reasonably conclude that Shaw expected the police would respond to the scene to investigate the shooting since the incident occurred in daylight, there were two surviving victims who would have likely called the police, and his girlfriend was inclined to call the police to enforce a protection order against Hinchen.

{¶45} Shaw's discharging a firearm on or near a prohibited premises should have been reduced to a first-degree misdemeanor because the verdict form failed to state either the degree of the offense or the offense enhancing language that would have elevated the offense to a third-degree felony.

{¶46} Shaw was not deprived of his Sixth Amendment right to counsel even though counsel did not request a jury instruction on tampering with evidence that included special instructions on the "knowingly" mens rea of the offense. The jury

instructions provided by the trial court were consistent with the applicable statutes and the Ohio Supreme Court's decision in *Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248.

**{¶47}** Accordingly, the trial court's judgment is affirmed in part and modified in part. Shaw's discharging a firearm on or near a prohibited premises conviction is reduced from a third-degree felony to a first-degree misdemeanor to conform to the verdict form. We remand the case to the trial court for resentencing on the first-degree misdemeanor.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence with resentencing on the first-degree misdemeanor.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

TIM McCORMACK, P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE ATTACHED OPINION

SEAN C. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶48} I respectfully dissent from the majority's view on the first assignment of error that there was sufficient evidence to establish that Shaw committed all of the elements of tampering with evidence. At most, Shaw committed falsification, an offense for which he was not charged. Under the majority's rationale, every defendant who does not immediately confess to the police and turn over all evidence of a crime has arguably tampered with evidence. This is an erroneous application of the tampering with evidence statute that stretches the inferences of what a criminal defendant does to an unreasonable extreme. I concur with regard to the other assignments of error.