[Cite as *In re S.D.*, 2019-Ohio-1867.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: S.D. | : | APPEAL NOS. C-180020 |
| | | C-180021 |
| | | C-180022 |
| | | TRIAL NOS. 17-5167X |
| | : | 17-5168X |
| | | 17-5170X |
| | : | *O P I N I O N.* |


Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: May 15, 2019


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Appellant S.D.

**MYERS, Presiding Judge.**

{¶1}   Appellant S.D. has appealed from the trial court's judgments adjudicating him delinquent of carrying a concealed weapon, discharging a firearm on or near a public road or highway, and tampering with evidence with an accompanying firearm specification.

{¶2}   In three assignments of error, he argues that the trial court erred in adjudicating him delinquent because the manifest weight of the evidence established that he had acted in self-defense; that his adjudication for tampering with evidence was not supported by sufficient evidence; and that his adjudication for carrying a concealed weapon was not supported by sufficient evidence and was against the manifest weight of the evidence.  Finding no merit to S.D.'s assignments of error, we affirm the trial court's judgments.

### Factual Background

{¶3}   On September 4, 2017, S.D. was involved in an altercation at a Sunoco gas station on Hamilton Avenue.  At that time, S.D. was 17 years old.  The state filed complaints alleging that S.D. was a delinquent child for committing acts that, if committed by an adult, would have constituted the offenses of carrying a concealed weapon, discharging a firearm on or near a public road or highway, and tampering with evidence.  The complaint for tampering with evidence contained two firearm specifications alleging that S.D. had a firearm on or about his person while committing the offense and that S.D. brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

{¶4}   At a trial before a juvenile court magistrate, Springfield Township Police Sergeant Travis Greer and Police Officer Pat Kemper testified that on the day of the offenses, they had responded to the Sunoco station in response to a call for

shots fired. As they investigated, the officers observed shell casings lying on the ground in various locations. Officer Kemper testified that a group of shell casings were recovered near the front door of the gas station, and that a separate group of shell casings were recovered from the intersection of Hamilton Avenue and Seven Hills Drive, which was approximately 50 yards away from the gas station's front door.

{¶5} The officers obtained surveillance videos from the gas station depicting the events that had occurred prior to their arrival. The videos were played for the magistrate and admitted into evidence. Both officers identified S.D. on the surveillance videos, which showed S.D. and his companions engaged in a seemingly tense confrontation with several other individuals. During the confrontation, one of S.D.'s companions, identified by Officer Kemper as S.D.'s brother, reached towards S.D.'s right side, near his pants pocket or waistline. S.D. shielded himself and tried to prevent his brother from grabbing something off his person. Almost immediately thereafter, an individual from the other group produced a gun and pointed it at S.D. People began running towards the front of the gas station as the individual began firing the gun. S.D. ran towards the front door with a gun visible in his hand. He started to enter the gas station store, but then turned and returned fire into the parking lot. He cleared a jam in his gun and then continued firing as he walked away from the store and towards the street. S.D. paced back and forth in front of the gas station with the weapon in his hand before tossing it to a companion who had motioned for it. Both S.D. and his companion then fled from the scene. The weapon was never recovered.

{¶6} In reviewing the videos, Officer Kemper testified that he could not see a weapon on S.D. at the beginning of the altercation. He did, however, see S.D.'s brother attempt to grab something off S.D.'s person, while S.D. postured his body as if he was guarding something. At that time, Officer Kemper saw something in S.D.'s hand that gave off a silver reflection.

{¶7}   The magistrate adjudicated S.D. delinquent of all charges, including both firearm specifications.  S.D. filed objections to the magistrate's decisions, challenging each adjudication and the accompanying firearm specifications.  At a hearing on S.D.'s objections, the state conceded that the facilitation-firearm specification (alleging that S.D. had either brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense) was not supported by the evidence.  The trial court dismissed this firearm specification, but otherwise overruled S.D.'s objections.  It adopted the magistrate's decisions as its own, as modified, and entered judgment accordingly.

### *Self-Defense*

{¶8}   In his first assignment of error, S.D. argues that the trial court erred in adjudicating him delinquent because the manifest weight of the evidence established that he had acted in self-defense.  Although he contends that all of his adjudications should be reversed for this reason, we only analyze his self-defense argument with respect to his adjudication for discharging a firearm on or near a public road or highway, because self-defense is not a defense to adjudications for carrying a concealed weapon and tampering with evidence.

{¶9}   When considering a challenge to the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶10}   Self-defense is an affirmative defense that S.D. had the burden of establishing by a preponderance of the evidence.  *State v. Smith*, 1st Dist. Hamilton

4

No. C-170028, 2018-Ohio-2504, ¶ 57-58.[1] To prove that he had acted in self-defense, S.D. had to establish "(1) that he was not at fault in creating the violent situation, (2) that he had a bona fide belief that he was in danger of imminent death or great bodily harm and that the only means of escape was by use of force, and (3) that he did not violate any duty to retreat or avoid the danger." *Id.* at ¶ 57. The elements of self-defense are cumulative, and if S.D. failed to meet his burden of proof on any of these elements, then he failed to establish that he had acted in self-defense. *Id.* at ¶ 58.

{¶11} Here, S.D.'s self-defense argument failed because he did not establish by a preponderance of the evidence that he had not violated a duty to retreat or avoid the danger. The altercation took place in the parking lot of a gas station. When the first shots were fired, indisputably by someone other than S.D., multiple people ran and took shelter inside the gas station store. But rather than flee the scene or take shelter, S.D. chose to approach and return fire. The surveillance video illustrates that S.D. initially began to enter the gas station store, but rather than continue inside, he stopped and turned back into the danger. S.D. elected to advance out into the parking lot while firing repeatedly. S.D. had a reasonable means of escape and failed to retreat. *Id.* at ¶ 63. *See State v. Morgan*, 1st Dist. Hamilton No. C-160495, 2017-Ohio-7489, ¶ 41 (where a confrontation occurred in a public park, the defendant failed to prove by a preponderance of the evidence that she had not violated the duty to retreat where she stabbed the victim in the neck rather than leave the park).

{¶12} We hold that S.D. failed to establish by a preponderance of the evidence that he had acted in self-defense. The first assignment of error is overruled.

---

[1] As noted but not argued by S.D.'s counsel during oral argument, the General Assembly amended Ohio's law on self-defense while S.D.'s appeal was pending. Under the amended statute, if there is evidence that tends to support that the accused acted in self-defense, the state bears the burden of proving beyond a reasonable doubt that he did not. R.C. 2901.05(B)(1). We apply the version of the statute in effect at the time that the offenses were committed. *State v. Dukes*, 4th Dist. Scioto Nos. 16CA3745 and 16CA3760, 2017-Ohio-7204, ¶ 60, fn. 3.

***Tampering With Evidence***

{¶13}   In his second assignment of error, S.D. argues that his adjudication for tampering with evidence was not supported by sufficient evidence.  This adjudication was based on S.D.'s act of tossing his gun, which was never recovered, to an acquaintance who had motioned for it.

{¶14}   In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶15}   S.D. was adjudicated delinquent of tampering with evidence pursuant to R.C. 2921.12(A)(1), which provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."  There are three elements to the offense:  "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation."  *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

{¶16}   S.D. first contends that the state failed to prove that he knew an official investigation was in progress or likely to be instituted.  In support, he relies on *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248.  In *Barry*, the defendant had hidden drugs inside her body cavity.  While she was carrying the drugs, the car that Barry was driving was stopped for a traffic violation.  Officers smelled marijuana in Barry's vehicle, and, after speaking with the other passengers,

discovered that Barry was carrying drugs inside her. Barry was charged with several drug-related offenses and tampering with evidence. During a jury trial, the jury was instructed with respect to the charge for tampering with evidence that "[w]hen an offender commits an unmistakable crime, the offender has constructive knowledge of an impending investigation of the crime committed." *Id.* at ¶ 9. Barry was found guilty of tampering with evidence and challenged that conviction on appeal. The Ohio Supreme Court considered whether the "unmistakable crime" doctrine could be used to show that Barry had knowledge that an investigation was likely. The court held that:

> Ohio does not recognize the "unmistakable crime" doctrine in connection with the offense of tampering with evidence because that doctrine erroneously imputes to the perpetrator constructive knowledge of a pending or likely investigation into a crime; merely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted.

*Id.* at ¶ 26. The court ultimately concluded that, at the time that she had concealed the drugs inside her body, Barry was unaware that an investigation into her drug activity was likely. *Id.* at ¶ 27.

{¶17} S.D. argues that the state impermissibly relied on his possession of a gun to show that he had constructive knowledge of a pending or likely investigation into his actions, in violation of the court's holding in *Barry*. We disagree.

{¶18} Within two years of deciding *Barry*, the court revisited the issue of a defendant's knowledge of an official investigation or knowledge that an investigation was likely to be instituted in *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857. In *Martin*, the defendant shot two people and later burned the clothes

that he was wearing at the time of the shooting. Martin was convicted of multiple offenses, including tampering with evidence. With respect to the conviction for tampering with evidence, the court distinguished *Barry* in determining that Martin had knowledge of a pending or likely investigation. It explained that the underlying offense in *Barry* was heroin possession, that the alleged tampering was the defendant's concealment of the heroin in a body cavity, and that the defendant had no reason to believe she would be stopped by law enforcement at the time that she concealed the heroin. *Id.* at ¶ 117. In *Martin*, however, it could be inferred that Martin, who had shot two people in a residential neighborhood and left them for dead before burning the clothing that was the subject of the tampering, would have known that an investigation into his actions was likely. *Id.* at ¶ 116. The court held that "*Barry* does not foreclose the possibility that knowledge of a likely investigation may be inferred when the defendant commits a crime that *is* likely to be reported," recognizing that homicide was one such crime that was likely to be investigated. *Id.* at ¶ 118.

{¶19} The facts of the case before us are more analogous to those in *Martin* than *Barry*. Here, S.D. repeatedly fired his weapon in a gas station parking lot in the presence of multiple people before he tossed his gun to an acquaintance. Shots fired at people were likely to be reported, and it can reasonably be inferred that S.D. had knowledge that an investigation into his actions was likely at the time that he handed off the gun. *See id.*; *see also State v. Shaw*, 2018-Ohio-403, 105 N.E.3d 569 (8th Dist.) (holding that, where the defendant had shot a gun in broad daylight in a residential neighborhood during a confrontation with two individuals, it was reasonable to infer that the defendant had known there was a strong likelihood that the police would arrive to investigate); *State v. Hallman*, 8th Dist. Cuyahoga No. 103675, 2016-Ohio-3465 (holding that, when reviewing a challenge to the sufficiency of the evidence supporting a conviction for tampering with evidence, "a reasonable inference could be made that the defendant believed there was a high probability the

discharge of his firearm in an apartment building was likely to lead to the police being summoned.").

{¶20} S.D. further argues that the state failed to prove that he had purposefully impaired the availability of the gun. Circumstantial evidence can be relied on to establish that a defendant has purposely impaired the availability of evidence. *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 28. Here, S.D.'s specific intent to impair the availability of the gun can be inferred from his act of willingly tossing the gun to his acquaintance, who then fled from the scene with the weapon. *See id.* at ¶ 29.

{¶21} Following our review of the record, we hold that it contains sufficient evidence that S.D., with the knowledge that an official investigation was likely to be instituted, purposefully concealed or removed his weapon with the purpose of impairing its availability as evidence in the investigation, and that his adjudication for tampering with evidence was supported by sufficient evidence. The second assignment of error is overruled.

### Carrying a Concealed Weapon

{¶22} In his third assignment of error, S.D. challenges his adjudication for carrying a concealed weapon, arguing that it was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶23} The standards for reviewing a challenge to the sufficiency and the weight of the evidence are set forth above. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus; *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶24} S.D. was adjudicated delinquent of carrying a concealed weapon pursuant to R.C. 2923.12(A)(2), which provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * [a] handgun other than a dangerous ordnance."

{¶25} S.D. specifically argues that the state failed to prove that his weapon was concealed. A weapon is concealed where it is "so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed[.]" *State v. Terry,* 1st Dist. Hamilton No. C-050721, 2006-Ohio-4126, ¶ 8, quoting *State v. Pettit,* 20 Ohio App.2d 170, 173-174, 252 N.E.2d 325 (4th Dist.1969).

{¶26} The surveillance videos that captured the altercation at the gas station showed that S.D. had no weapon in his hand while engaged in the purely verbal confrontation between him and his acquaintances and the other individuals. It further depicted S.D.'s brother attempting to grab at S.D.'s right side near his waistline, and S.D. posturing his body to prevent his brother from taking anything off his person. Officer Kemper first noticed a silver reflection in the video right after S.D.'s interaction with his brother. Almost immediately thereafter, a shot was fired by one of the other individuals, and S.D. is seen on the video with a gun in his hand, returning fire.

{¶27} This evidence, viewed in the light most favorable to the prosecution, established that S.D. had a weapon concealed on his person. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. And this was not the rare case in which the trier of fact, in weighing the evidence, lost its way and committed a manifest miscarriage of justice in adjudicating S.D. delinquent. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶28} We hold that S.D.'s adjudication for carrying a concealed weapon was supported by both the sufficiency and the weight of the evidence. The third assignment of error is overruled, and the judgments of the trial court are accordingly affirmed.

Judgments affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

**Please note:**

> **The court has recorded its own entry on the date of the release of this opinion.**