[Cite as *State v. Thompson*, 2024-Ohio-5082.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240211 |
| | | TRIAL NO. B-2303225 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| ANTHONY WADE THOMPSON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: October 23, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}  Anthony Wade Thompson was convicted, after a bench trial, of carrying a concealed weapon.  In two assignments of error, Thompson contends his conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

### Factual Background

{¶2}  Thompson was charged with carrying a concealed weapon on his person.  Thompson pled not guilty and proceeded to a bench trial.  Prior to trial, the parties stipulated that Thompson possessed an operable firearm and was not a law enforcement officer or other state employee authorized to carry a concealed firearm.

{¶3}  Justin Hunt, the lead investigator for the Jail Services Division of the Hamilton County Sheriff's Office, testified that he was working an off-duty detail on July 8, 2023.  Hunt was assigned a garage detail at the Bank's garage located between the stadiums.  As part of his duties, he was dressed in his uniform while patrolling the garage in his personal vehicle.  That evening, as Hunt was monitoring the foot traffic in the garage, he observed three males walking toward him.  The male closest to his car, Anthony Wade Thompson, had something "hanging out of the pocket."  When Thompson was within two feet of Hunt's driver's door, Hunt noticed what appeared to be the butt of a handgun, but he was not certain if it was actually the butt of a gun.

{¶4}  As Thompson walked past his car, Hunt got out of his car and asked him to stop.  Hunt approached Thompson, looked down at his pocket, "and that's when [he was] able to identify that he has a firearm sticking out of his pocket."  Hunt placed the gun in his front, right pocket to demonstrate to the court how much of the gun was visible.  Hunt testified that the length of the butt of the gun that was visible was approximately the width of two fingers.  Admittedly, Hunt suspected that Thompson

2

had a gun, but Hunt could not confirm his suspicion until he walked up to Thompson and looked into his pocket. Hunt further explained that the gun was visible when Thompson turned toward him at almost a 45 degree angle with his pocket facing Hunt. When Hunt was within arm's reach of Thompson, he looked into the pocket and was able to identify the handle grip of a firearm. Hunt arrested Thompson and radioed for assistance. Hunt identified Thompson in court.

{¶5} On cross-examination, Hunt was questioned about his police report and acknowledged that he wrote that the grip of the gun was visible and did not refer to the butt of the handgun. Hunt did not note that he could not identify the gun until he approached Thompson. Hunt confirmed that he wrote that the handgrip of a gun was visible as Thompson walked past his vehicle and clarified that when Thompson passed, his suspicion that it was a gun increased. Hunt further testified that Thompson was not "open carrying" because only the butt of the gun was visible.

{¶6} The court confirmed with Hunt that the grip and the butt of the gun are the same thing, and that Thompson was not wearing a holster. Upon further questioning by the court, Hunt explained that "open carry" refers to a fully visible firearm in a secure holster and visible without any obstruction. After Hunt's testimony, both parties rested.

{¶7} During closing arguments, Thompson argued that Hunt's report was inconsistent with his testimony because the report stated the grip was visible and did not mention that the length of the gun that was visible was the width of two fingers. Thompson further argued that his conduct constituted open carry because the grip of the firearm was visible.

{¶8} The trial court found that Hunt was "entirely credible," "candid," and "very direct." The court further found that Hunt's testimony that "all he saw when the defendant walked by him was a small portion of . . . the firearm" was "entirely credible." The court discounted any "alleged inconsistencies" between Hunt's testimony and report based on Hunt's "entirely credible" testimony. Based on these factual findings, the court found Thompson guilty.

## Sufficiency and Manifest Weight

{¶9} In his first and second assignments of error, argued together, Thompson argues that his conviction for carrying a concealed weapon was not supported by sufficient evidence and was contrary to the manifest weight of the evidence because he did not hide or conceal the firearm.

{¶10} When reviewing a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. As to the weight of the evidence, we review whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). We afford substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See State v. Glover*, 2019-Ohio-5211, ¶ 30 (1st Dist.).

{¶11} Thompson was convicted of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), which states that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: . . . (2) A handgun other than a dangerous ordnance."

4

{¶12} "A weapon is concealed where it is 'so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed[.]' " *In re S.D.*, 2019-Ohio-1867, ¶ 25 (1st Dist.), quoting *State v. Pettit*, 20 Ohio App.2d 170, 173-174 (4th Dist. 1969). "Even a partially concealed gun can be found to be 'concealed' under R.C. 2923.12." *In re M.M.*, 2015-Ohio-3485, ¶ 16 (1st Dist.), citing *State v. Almalik*, 41 Ohio App.3d 101 (8th Dist. 1987). Numerous courts have held that a defendant may be convicted under R.C. 2923.12 even if the gun is partially visible. *See State v. Pryor*, 2012-Ohio-1033, ¶ 14 (1st Dist.); *State v. Carroll*, 1993 Ohio App. LEXIS 2934, 6 (8th Dist. June 10, 1993) (gun was concealed where the officer did not see the partial butt of the gun until after he got out of his car and approached the appellant on foot); *State v. Dixon*, 1987 Ohio App. LEXIS 10212 (8th Dist. Dec. 24, 1987) (a gun was concealed when "only a part of the gun butt was visible when the car door was open and the driver was outside of the car"); *State v. Bozeman*, 1990 Ohio App. LEXIS 5372 (8th Dist. Dec. 6, 1990) (the defendant's firearm was concealed when "only the butt of the firearm was discernable").

{¶13} Thompson argues that the firearm was sticking out of his pocket as he approached Hunt's car, and therefore, was not concealed. However, Hunt testified that he saw something sticking out of Thompson's pocket when he was next to Hunt's vehicle, but Hunt could not identify the object. Hunt could not identify it as a gun until he approached Thompson and looked down at his pocket. The length of the butt of the gun that was visible was approximately the width of one or two fingers. In rendering a guilty verdict, the trial court specifically found that Hunt's testimony was "entirely credible."

**{¶14}** This evidence, viewed in the light most favorable to the prosecution, established that Thompson had a weapon concealed on his person, and this was not the rare case in which the trier of fact, in weighing the evidence, lost its way and committed a manifest miscarriage of justice.

**{¶15}** We overrule the first and second assignments of error.

## Conclusion

**{¶16}** Having overruled Thompson's two assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**BERGERON** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its own entry this date.